IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH HIGGINS,
LESLIE GARCIA and
JOSE URBAN,

       Plaintiffs,

     vs.                               Civ. No. 11-757 JAP/ACT

CHARLES BACA and
CITY OF SANTA ROSA,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Second Motion to Compel Confidential Informant Information [Doc. No. 56] filed September 14, 2012 ("Second Motion"). The Defendants filed their Response in Opposition [Doc. 62] on September 25, 2012 ("Response"), and the Plaintiff filed their Reply [Doc. 66] on October 9, 2012 ("Reply").  A Notice of Completion of Briefing [Doc. 67] was filed on October 9, 2012.

The primary issues before the Court are (i) whether Defendant Baca should be ordered to produce as requested in Plaintiffs' Request for Production No. 12 the confidential informant file for the confidential source relied upon for preparing the search/arrest warrants against the Plaintiffs in this action, including the confidential source's arrest record, the operational plan prepared prior to executing the arrest warrants, and the "list" of names created by the confidential informant in conjunction with the operational plan; (ii) whether Defendant Baca should produce as described in Plaintiffs' Request for Production No. 15 the tactical plans, electronic communications, cad reports, cad recordings, and dispatch recordings related to the execution of the search/arrest warrants of all persons arrested on or about May 21, 2010; and (iii) whether Defendant Baca should identify as asked in Plaintiffs' Interrogatory No. 19 the confidential informant by name,

address, date of birth and social security number.  For the reasons discussed below, the Court finds

that the Second Motion will be granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2011, Plaintiffs filed their Complaint for Recovery of Damages Due to

Deprivation of Civil Rights and Violation of Tort Claims Act in the Fourth Judicial District Court,

Guadalupe County, New Mexico. [Doc. No. 1-1.] Police Officer Charles Baca was the only named

Defendant ("Defendant Baca"). [Doc. No. 1-1]  Plaintiffs filed their Amended Complaint on

August 24, 2011, adding the City of Santa Rosa as a named Defendant.[1] [Doc. No. 1-3.]  On

August 24, 2011, Defendants filed a Notice of Removal to the United States District Court for the

District of New Mexico ("Notice of Removal"). [Doc. No. 1]

The factual basis of Plaintiffs' Complaint involves allegations made by Defendant Baca

against Plaintiffs Joseph Higgins, Leslie Garcia and Jose Urban of "hand-to-hand" sales of illicit

drugs in Santa Rosa, New Mexico, in March 2010, and against Jose Urban for the distribution of

methamphetamine in Santa Rosa, New Mexico, in May 2010 – allegations that formed the basis of

search/arrest warrants being executed against the Plaintiffs on May 21, 2010. [Doc. 1-3 at ¶¶ 4-6,

7.] Plaintiffs claim that Defendant Baca relied upon confidential informant information to support

the allegations against Plaintiffs in his warrant affidavits. [Id. at ¶ 11.] Plaintiffs further claim that

the executed warrants produced no illicit drugs or evidence of illicit drugs at Plaintiffs' residences

and the charges were dismissed. [Id. at ¶¶ 8, 9.]  Plaintiffs assert that the  allegations made by

Defendant Baca in his warrant affidavits were false, and that as a result of those false allegations

they were each subjected to an unreasonable search and seizure in violation of the Fourth

---

[1]  The City of Santa Rosa was dismissed as a party to this action on September 20, 2012.  Therefore, the claims involving the City of Santa Rosa will be omitted from the factual and procedural discussion contained herein.

Amendment of the United States Constitution. [Doc. 1-3 at Count I.]  Plaintiffs state that twenty

(20) other residents of Santa Rosa were also subjected to search/arrest warrants on May 21, 2010,

and that the charges against all arrestees were subsequently dismissed because the confidential

informant was unwilling to testify as to the alleged criminal acts. [Id. at ¶¶ 7, 12.] Plaintiffs believe

they were deprived of their due process rights because the planning and implementation of the

operation leading to Plaintiffs' arrests lacked viability from the outset given the Defendant's

knowledge that the confidential informant would refuse to testify. [Id. at Count II.]

Defendant Baca filed his Answer on August 31, 2011. [Doc. No. 6]  Defendant Baca denies

Plaintiffs' claims and asserts affirmative defenses, *inter alia*, of qualified immunity and that

Plaintiffs fail to state claims upon which relief may be granted. [Id.]

Plaintiffs filed their first Motion to Compel [Doc. No. 34] on May 9, 2012, which was fully

briefed by the parties and ruled on by this Court in its Memorandum Opinion and Order [Doc. No.

49] on July 27, 2012.  In its July 27, 2012, Memorandum Opinion and Order, the Court addressed

the outstanding discovery issues raised herein as follows:

> 1.    Request for Production No. 15
>
> As evidenced by Defendants' response, the information requested in Interrogatory [sic] No. 15 may be relevant to Plaintiffs' claims and appears reasonably calculated to lead to the discovery of admissible evidence.  Therefore, Defendants are ordered to produce the State of New Mexico Uniform Incident Reports for the arrests of each individual arrested on or about May 21, 2010, based upon information supplied by Defendant Baca and the confidential informant discussed herein in response to this interrogatory. The names and addresses of the individuals identified in the incident reports may be redacted.  The State of New Mexico Uniform Incident Reports are to be numbered to correspond to the arrest affidavits and arrest warrants; e.g., the State of New Mexico Incident Report related to arrest affidavit No. 1 and arrest warrant No. 1 is to be identified as report No. 1.

[Doc. No. 49 at pp. 11-12.]

2.      Request for Production No. 12 and Interrogatory No. 19

The Court will conduct an *in camera* hearing so that Plaintiffs may obtain information . . . and question the confidential informant.  . . .   The Court finds that the above interrogatories are reasonably calculated to lead to the discovery of admissible evidence because they seek information about the confidential informant, whose testimony may either buttress or discredit Plaintiffs' claims. . . .   The Court acknowledges that ordering Defendants to answer the interrogatories may potentially expose the confidential informant and Defendant Santa Rosa to adverse consequences. On the other hand, to refrain from ordering Defendants to answer the interrogatories may eliminate Plaintiffs' ability to question a seemingly integral witness to the incidents and activities which form the basis of their claims.  Thus, the Court must balance the interests of the parties to reach an equitable outcome.

. . .

(1) The Court will issue an order to Defendants' counsel only, requiring counsel to produce Defendant Baca, along with the informant whose information was used in drafting the arrest affidavits and in securing the arrest warrants for all people arrested on or about May 21, 2011, for an *in camera* hearing at 10:00 AM on August 31, 2012. Plaintiffs and Plaintiffs' counsel are not permitted to attend this hearing.

(2)  On or before August 27, 2012, Plaintiffs' counsel will submit to this court, in writing, suggested questions to be asked by the Court to Officer Baca regarding the informant's identity and background or to the informant himself on any relevant subject.

[Doc. No. 49 at pp. 13-15.]

On July 27, 2012, the Court entered a Notice of *In Camera* Hearing [Doc. No. 50] scheduling the hearing for August 31, 2012.  The *in camera* hearing was held on August 31, 2012. Defendant Baca was present at the hearing; however, the confidential informant failed to appear. [Tr. at 2-3.] Counsel for Defendant Baca reported to the Court that the confidential informant had been picked up for a probation violation and was incarcerated. [Tr. at 3.]  Judge Torgerson proceeded with the hearing stating that "under the circumstances, since counsel for defendants are here and Officer Baca is here, we'll do what we can do this morning, and then we'll decide how to proceed after we've informed counsel for the plaintiff that the confidential information did not show up." [Tr. at 4.] Defendant Baca was subsequently sworn in and was questioned by Judge

4

Torgerson.  As provided in the Court's July 27, 2012, Memorandum Opinion and Order, the parties were provided with a transcript of the *in camera* hearing.

Plaintiffs acknowledge in their Second Motion that the *in camera* hearing provided for a balanced approach that recognized the interests of the parties in this matter. [Doc. No. 56 at 1.] However, given the confidential informant's failure to appear due to his untimely arrest, Plaintiffs assert that their critical discovery requests remain outstanding; i.e., the confidential informant file for the confidential source relied upon for preparing the search/arrest warrants against the Plaintiffs in this action, including the confidential source's arrest record, the operational plan prepared prior to executing the arrest warrants, and the "list" of names created by the confidential informant in conjunction with the operational plan, and the identity of the confidential informant. [Id. at 4-5.] Plaintiffs suggest that the confidential informant's "sudden" arrest reflects "that the testimony of the Confidential Informant would not be favorable." [Id. at 1.] Plaintiffs further suggest that Defendant Baca's testimony at the *in camera* hearing supports the critical nature of the confidential informant's testimony to the prosecution of their case because (1) Defendant Baca testified regarding the vetting process used for establishing the confidential informant's credibility, and (2) Defendant Baca testified regarding the confidential informant's role in the operation by providing the names of suspects and making "preliminary buys."  [Id. at 2.] Plaintiffs argue that the only person other than Defendant Baca who witnessed the alleged drug sales by the Plaintiffs is the confidential informant. [Id.].  Plaintiffs further argue that the only person other than the Plaintiffs who can  impeach Defendant Baca is the confidential informant. [Id. at 5.]  Plaintiffs rely on *Rodriguez v. City of Springfield*, 127 F.R.D. 426 (D.Mass. 1989) to legitimize their concern regarding the "fictitious use" of confidential informants "to accomplish illicit law enforcement goals." [Id. at 2.]  Finally, Plaintiffs submit that Defendant Baca has not shown that the Plaintiffs or

their counsel are a risk to the confidential informant thereby precluding disclosure of the

confidential informant's identity on that basis. [Id. at 2.]

Plaintiffs are requesting the Court order the following be provided to Plaintiffs' counsel:

1.  The operational plan;

2.  The complete criminal history, including arrest records and conviction records [of confidential informant];

3.  Any documents that Defendant Baca reviewed from any other police agency;

4.  Any "list" of targets created by the confidential informant; and

5.  The identity of the confidential informant for the purpose of taking his deposition.

[Id. at 6.]

Defendant Baca submits three arguments in his Response.  First, Defendant Baca argues

that the Plaintiffs have not supplied any newly discovered evidence that would support Plaintiffs'

claims against Defendant Baca, and that Plaintiffs only speculate when they suggest that the

confidential informant's failure to appear "naturally raises suspicion that [the CI's] testimony was

anticipated to conflict with the arrest warrant affidavits." [Response at 2, 3.]   Second, Defendant

Baca asserts that the confidential informant's testimony would be cumulative of Defendant Baca's

testimony because "they have identified no way in which the CI's testimony would differ from

Defendant's."   [Response at 4.]  Finally, Defendant Baca argues that Plaintiffs' reliance on

*Rodriguez v. City of Springfield*, 127 F.R.D. 426 (D. Mass. 1989), is misplaced because other than

stating the general principle regarding the use of *in camera* hearings for the discovery of

information involving an informant, *Rodriguez* has no relevance since the facts of *Rodriguez*

supported a threshold showing of police officer misconduct and not merely speculation that police

misconduct may have occurred. [Response at 6.]

6

Plaintiffs' Reply alerts the Court that they may have already determined the confidential

informant's identity and have initiated a lawsuit against the person they believe to be the

confidential informant. [Reply at 2.] Plaintiffs therefore argue that the informer's privilege only

applies if it has not been breached. [Id.]  That said, Plaintiffs reiterate their request that this Court

order, *inter alia*, the identity of the confidential informant because his identity and testimony is

"essential to a fair determination" in this case. [Id.]

## RELEVANT LAW

### A.      DISCOVERY

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's

claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.  Federal courts

have held that the scope of discovery under Rule 26 is deliberately broad.  "The way is now clear,

consistent with recognized privileges, for the parties obtain the fullest possible knowledge of the

issues and facts before trial."  *Hickman v. Taylor*, 329 U.S. 495, 501 (1974);  *see Gomez v. Martin

Marietta Corp*., 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matt*, 229 F.R.D. 649, 654

(D.N.M. 2004 (Browning, J.) ("The federal courts have held that the scope of discovery should be

broadly and liberally construed to achieve the full disclosure of all potentially relevant

information.").

A district court is not, however, "required to permit plaintiff to engage in a 'fishing

expedition' in the hope of supporting his claim."  *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th

Cir. 2002)(unpublished).  *See Tottenham v. Trans World Gaming Corp*., 2002 WL 1967023, at *2

(S.D.N.Y. 2002) (Knapp, J.) ("Discovery, however, is not intended to be a fishing expedition, bur

rather is meant to allow the parties to flesh out allegations for which they initially have at least a

modicum of objective support.")(citation omitted)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp*., 50 F.3d at 1520.

Court have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the "object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D.Ill. 1998)(quoting *Piacenti v. General Motors Corp*., 173 F.R.D. 221, 223 (N.D.Ill. 1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. Court have also recognized that "[t]he legal tenet that relevancy in the discovery content is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

Rule 26 was amended in 2000 to state that the material requested must be "relevant to the claim or defense of any party," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action"). The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

Rule 33 requires a party to answer an interrogatory "separately and fully . . ., unless it is objected to, in which event the objecting party . . . shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33(b)(1). Likewise, Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If no objection is made to part of an item or category, that part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). Rule 33 provides: "all grounds for an objection to an interrogatory shall be stated with specificity." Fed. R. Civ. P. 33(b)(4). "The burden is on the objecting party to show why an interrogatory is improper." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2173, at 291-92.

Rule 37 provides enforcement mechanisms for rules 33 and 34. According to Rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(A)(3). If the Court grants the motion to compel,

> the court shall, afer affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).

### B.      PRIVILEGES

Federal Rule of Evidence 501 provides:

> Except as otherwise required by the Constitution of the United States or provided
> by Act of Congress or in rules prescribed by the Supreme Court pursuant to
> statutory authority, the privilege of a witness, person, government, State, or political
> subdivision thereof shall be governed by the principles of the common law as they
> may be interpreted by the courts of the United States in the light of reason and
> experience.  However, in civil actions and proceedings, with respect to an element
> of a claim or defense as to which State law supplies the rule of decision, the
> privilege of a witness, person, government, State, or political subdivision thereof
> shall be determined in accordance with State law.[2]

The leading case on the informer's privilege is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623

(1957).  In *Roviaro*, the United States Supreme Court stated "[t]he purpose of the privilege is the

furtherance and protection of the public interest in effective law enforcement.  The privilege

recognizes the obligation of citizens to communicate their knowledge of the commission of crimes

to law-enforcement officials and, by preserving their anonymity, encourages them to perform that

obligation." *Roviaro*, 353 U.S. at 59.  A defendant seeking disclosure of the identity of a

confidential informant has the burden of demonstrating a need for disclosure.  *Id.*  One limitation

on the applicability of the privilege arises from the fundamental requirements of fairness.  *Roviaro*,

353 U.S. at 60.  "Where the disclosure of an informer's identity, or of the contents of his

communication, is relevant and helpful to the defense of an accused, or is essential to the fair

determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60; *United States v.*

*Mendoza*, 236 Fed.Appx. 371, 386 (10th Cir. 2007)(unpublished opinion).  A second limitation on

the applicability of the privilege arises "once the identity of the informer has been disclosed to

---

[2]   Federal privilege law governs when the court's jurisdiction is premised on a federal question.  *See*
*Vondrak v. City of Las Cruces*, 760 F.Supp.2d 1170 (D.N.M. 2009)(Browning, J.); *Virmani v. Novant Health Inc.*,
259 F.284, 286 n.3 (4th Cir. 2001); *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000); *Hancock v. Hobbs*, 967 F.2d
467 (11th Cir. 1992); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992); *von Bulow v. von Bulow*, 811 F.2d
136, 141 (2d Cir. 1987); and *Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1061 & n.3 (7th Cir. 1981).

those who would have cause to resent the communication[.]" Roviaro, 353 U.S. at 60.  To

determine the privilege's applicability, the Supreme Court has set forth a balancing test whereby

the public's interest in protecting the flow of information and the personal safety of the informant is

weighed against the individual's need for the informant's identity.  *Roviaro*, 353 U.S. at 62, 77

S.Ct. at 628.  "Whether a proper balance renders nondisclosure erroneous must depend on the

particular circumstances of each case, taking into consideration the crime charged, the possible

defenses, the possible significance of the informer's testimony, and other relevant factors."

*Roviaro*, 353 U.S. at 62; *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987).

> The Tenth Circuit in *United States v. Moralez*, 908 F.2d 565 (10th Cir. 1990), described the

balancing of interests as follows:

> [C]ases involving confidential informants fall into several broad categories.  At one
> extreme are the cases where the informant is a mere tipster, and disclosure is not
> required.  At the other extreme are cases such as *Roviaro* itself where the informant
> has played a crucial role in the alleged criminal transaction, and disclosure and
> production of the informant are required to ensure a fair trial.  In addition, there are
> cases where there is a slight possibility a defendant might benefit from disclosure,
> but the government has demonstrated a compelling need to protect its informant.

908 F.2d at 568 (citing *United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976)).

> In applying the *Roviaro* standard, the Tenth Circuit has held that mere speculation about the

usefulness of an informant's testimony is not sufficient.  *United States v. Scafe*, 822 F.2d 928, 933

(citing *United States v. Zamora*, 784 F.2d 1025, 1030 (10th Cir. 1986); *United States v. Halbert*,

668 F.2d 489, 496 (10th Cir.), *cert denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1981).

Disclosure of an informant is not required where the information sought from him would be merely

cumulative, or where the informant is not a participant in the transaction in question.  *United States*

*v. Scafe*, 822 F.2d 928, 933 (citing *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986);

*United States v. Perez-Gomez*, 638 F.2d 215, 218 (10th Cir. 1981).  Nor must the government

supply the defendant with information about an informer when the individual introduces suspected

traffickers to narcotics agents.  *United States v. Mendoza-Salgado*, 964 F.2d 993, 1001 (10th Cir.

1992)(citing *United States v. Ortiz*, 804 F.2d 1161, 1166 (10th Cir. 1986)).

The privilege, moreover, applies in criminal as well as civil cases.  *Brock v. On Shore*

*Quality Control Specialists, Inc*., 811 F.2d 282, 283 (5th Cir. 1987); *U.S. v. One 1986 Chevrolet*

*Van*, 927 F.2d 39, 43 (1st Cir. 1991)(citing *Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir.1989)); 2

J. Weinstein, Weinstein's Evidence ¶ 510[15] (1989).  The informer's privilege is "arguably

stronger" in civil cases "because the constitutional guarantees assured to criminal defendants are

inapplicable."  *In re Search of 1638 E. 2d St.*, 993 F.2d 773, 774 (10th Cir. 1993).  Under the

informer's privilege, the government is normally entitled to refuse to disclose the identity of person

who has furnished information relating to the investigation of a possible violation of law.  *Id*.  The

government is entitled to assert the informer's privilege without showing that reprisal or retaliation

is likely.  *Id.*

## ANALYSIS

### 1.   Request for Production No. 15.

The Court first addresses Plaintiffs' restated Request for Production No. 15 and points out

that the Court previously ruled on this in its July 27, 2012, Memorandum Opinion and Order as

follows:

Request for Production No. 15

As evidenced by Defendants' response, the information requested in Interrogatory [sic]
No. 15 may be relevant to Plaintiffs' claims and appears reasonably calculated to lead
to the discovery of admissible evidence.  Therefore, Defendants are ordered to produce
the State of New Mexico Uniform Incident reports for the arrests of each individual
arrested on or about May 21, 2010, based upon information supplied by Defendant
Baca and the confidential informant discussed herein in response to this interrogatory.
The names and addresses of the individuals identified in the incident reports may be
redacted.  The State of New Mexico Uniform incident Reports are to be numbered to

correspond to the arrest affidavits and arrest warrants; e.g., the State of New Mexico Incident Report related to arrest affidavit No. 1 and arrest warrant No. 1 is to be identified as report No. 1.

While the Plaintiffs inserted an "add on" to this request in their Second Motion specifically asking for the "operational plan" created for the Region Task Force, Plaintiffs included this same "add on" in their restated Request for Production No. 12, and it will be addressed in that context. Therefore, the Court's earlier ruling with respect to Request No. 15 remains as stated in its July 27, 2012, Memorandum Opinion and Order and is therefore denied herein as moot.

### 2.    Request for Production No. 12.

Plaintiffs' Request for Production No. 12 states as follows:

Please produce the confidential informant file for the confidential source you described in your affidavit for arrest warrant or search warrant against any of the Plaintiffs on or about May 20, 2010.  Please produce the arrest record of the confidential source you had described in your affidavit for search warrant.

The Defendant has an "operational plan," he has reports from other agencies, he has a criminal history in his control.  The "list of names that the confidential informant created even if redacted will show whether the CI truly named the Plaintiffs.

The Court previously determined that the documents requested in Plaintiffs' Request No. 12 are reasonably calculated to lead to the discovery of admissible evidence. [Doc. No. 49 at 14.]  In light of the confidential informant's failure to appear at the *in camera* hearing and in an attempt to balance the interests of both parties, the Court will grant in part and deny in part Plaintiffs' Request No 12.

Defendant Baca is ordered to produce to Plaintiffs' counsel only any and all documents that comprise the "operational plan" referred to by Defendant Baca during the *in camera* hearing before this Court on August 31, 2012,  for the Region V Task Force initiative that began in March 2010. [Tr. at 17-19.]  Defendant Baca is also ordered to produce to Plaintiffs' counsel only any and all reports from other agencies relied upon by Defendant Baca in choosing the confidential

informant for the Region V Task Force initiative that began in March 2010. [Tr. at 21-22.]

Defendant Baca is ordered to produce to Plaintiffs' counsel only the "confidential informant's file"

for the confidential informant, excluding his arrest records as discussed below.  Finally, Defendant

Baca is ordered to produce to Plaintiffs' counsel only the "list" of suspected individuals that was

provided to Defendant Baca and the Region V Task Force by the confidential informant redacted to

exclude the identities of everyone except Plaintiffs herein.  [Tr. at 19, 28.]  All documents

produced in response to this request are to be redacted to the extent necessary to protect the identity

of the confidential informant, as well as any individuals other than the Plaintiffs.

Plaintiffs' request for the confidential informant's arrest records is denied because their

production is not relevant to Plaintiffs' claims against Defendant Baca.  If an informant is known

by the police to be reliable, the information received by the police from an informant may establish

probable cause for the issuance of a search warrant.  *See United States v. Danhauer*, 229 F.3d 1002

(10th Cir. 2000); *United States v. Corral*, 970 F.2d 719 (10th Cir. 1992).  In this case, Defendant

Baca's reliance on and representation to the court regarding the confidential informant's credibility

were based on the confidential informant's past successes as reported to him by his sergeant and

other law enforcement agencies [Tr. at 20], and the confidential informant's successful completion

of the controlled narcotic purchases.  *See U.S. v. Jones*, 69 Fed.Appx. 401 (10th Cir.

2003)(declaring that the magistrate issuing the search warrant reasonably relied on the confidential

informant's statements based in part on the informant's successful completion of controlled

purchases).  Thus, the confidential informant's criminal history was not the basis for Defendant

Baca's either using or not using him in the Region V Task Force operation and has no bearing on

establishing Defendant Baca's credibility in the instant case.  The confidential informant's arrest

records also have no bearing on establishing the relevant credibility of the confidential informant in

the underlying case. As aptly stated by the Tenth Circuit in *United States v. One 1957 Ford Ranchero Pickup Truck*, 265 F.2d 21 (10th Cir. 1959), "reliability does not turn on the standing or reputation of the informant in the community, for reliable information of this kind may . . . come from persons not noted for their respectability."

### 3. Interrogatory No. 19.

The final question before the Court is whether disclosure of the confidential informant's identity as requested in Plaintiffs' Interrogatory No. 19 is essential to the fair determination of Plaintiffs' cause. Because the Court does not find that Plaintiffs have met their burden in this regard, the Court will deny Plaintiffs' Second Motion on this issue at this time.[3]

Looking to *Roviaro* for guidance, the Court must balance the public's interest in protecting the flow of information and the personal safety of the informant weighed against the individual's need for the informant's identity, taking into consideration the claims asserted, the possible significance of the informer's testimony, and other relevant factors. The Tenth Circuit decision in *Moralez* provides that for purposes of balancing these factors, cases involving confidential informants fall into several broad categories. 908 F.2d at 568. At one extreme are the cases where the informant is a mere tipster, where disclosure is not required, and at the other extreme are cases such a *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial.

---

[3] Plaintiffs have alerted the Court in their Reply that the "privilege *may* no longer apply as the Confidential Informant's family was threatened and the Confidential Informant declined an opportunity to keep what anonymity he has left. Also, Plaintiffs have initiated a state court lawsuit against the person *they believe* to be the Confidential Informant." (Emphasis added.) [Doc. No. 66 at 2.] While the Court acknowledges Plaintiffs' intimations that the identity of the confidential informant is known to them, and agrees that once the identity of the informer has been disclosed the informer's privilege is no longer applicable, the Court notes that Plaintiffs' s assertion remains cloaked in a degree of uncertainty and speculation.

Another category involves cases where disclosure might be beneficial, but there is a compelling

need to protect the informant.  *Id.*

The facts of this case are similar but not analogous to the facts of *Roviaro* where the

informant played a crucial role in the alleged criminal transaction, and disclosure and production of

the informant were required to ensure a fair criminal trial.  The *Roviaro* case involved the

informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or

search, but at the trial itself where the issue was the fundamental one of innocence or guilt.  The

petitioner there had been brought to trial upon a two-count federal indictment charging the sale and

transportation of narcotics.  The informer had been an active participant in the crime and "had

taken a material part in bringing about the possession of certain drugs by the accused, had been

present with the accused at the occurrence of the alleged crime, and might be a material witness as

to whether the accused knowingly transported the drugs as charged."  353 U.S. at 55.  Only the

informer was "in a position to amplify or contradict the testimony of government witnesses," and

his testimony was determined to be "highly relevant and . . . helpful to the defense."  353 U.S. at

63-64.

Here, the confidential informant provided information to law enforcement regarding people

in the Santa Rosa community who were suspected of selling or distributing drugs. [Tr. at 19.]  In

addition, the confidential informant participated in "cred buys" which were used to substantiate

whether or not the confidential informant's information about drugs he could obtain from suspects

was in fact reliable. [Tr. at 21.] Finally, the confidential informant played a role in controlled drug

transactions for the purpose of establishing probable cause, more akin to that of a "tipster."  While

the Court in *Roviaro* held that disclosure of the identity of the informant is normally required

where a search *without* a warrant is made on the basis of communications of an informer and the

Government claims the police had "probable cause," that is not the case here where a warrant was obtained. *Roviaro*, 353 U.S. at 61.

The case here involves a civil action where the primary question is not simply whether probable cause can be supported by the "totality of the circumstances" in the issuing of the warrants, but whether Defendant Baca made false allegations from the outset. As previously noted, the informer's privilege in civil cases is "arguably stronger"  because "the constitutional guarantees assured to criminal defendants are inapplicable." *In re Search of 1638 E. 2d St.*, 993 F.2d 773, 774 (10th Cir. 1993). At its core, Plaintiffs' civil rights action is targeting Defendant Baca's credibility including, but not limited to, his vetting of the confidential informant, the listing of Plaintiffs as "suspects," the alleged buying and selling of drugs involving the Plaintiffs, and the issuing of the search/arrest warrants against the Plaintiffs. To that end, Plaintiffs argue that the confidential informant's testimony is critical in order to discredit and/or impeach Defendant Baca's allegations. The Court disagrees.

While the *in camera* hearing did not result in testimony directly from the confidential informant as planned, it did produce testimony from Defendant Baca regarding the Region V Task Force operation, and the confidential informant's role in that operation, that eventually led to the search/arrest warrants executed on the Plaintiffs. Defendant Baca testified as follows: that the "operation plan" was prepared in conjunction with his sergeant, who according to Defendant Baca recommended the confidential informant used in the underlying case [Tr. at 18, 20]; that the vetting process employed in obtaining and utilizing the confidential informant was guided and informed by others within his own and the greater law enforcement community in New Mexico [Tr. at 14-26]; that other law enforcement agencies had used this particular confidential informant and vouched for his credibility [Tr. at 20]; that he and his sergeant initially approached the confidential

17

informant *together* [Tr. at 26]; that the "list of suspects" provided by the confidential informant

was reviewed not just by him but by his sergeant as well [Tr. at 20, 26]; that during the situations

where he was working alone with the confidential informant in observing what he believed to be

transactions involving the sale and purchase of narcotic drug or controlled substance, he was

reporting back to his supervisor [Tr. at 36]; and finally, that information regarding each individual

drug transaction involving the confidential informant was documented and then signed off by his

sergeant [Tr. at 42].  In sum, Defendant Baca's testimony from the  *in camera* hearing contains

information that provides Plaintiffs with sources other than the confidential informant from which

to either discredit and/or impeach Defendant Baca's credibility in the planning, investigating and

executing of the underlying search/arrest warrants at issue in this case.

Finally, the Court recognizes the need to protect the confidential informant.  Defendant

Baca raised concerns that given the small size of the Santa Rosa community, disclosing the

confidential informant's identity could impact his safety and his ability to assist law enforcement in

the future. [Doc. No. 38 at 11.] The Court reiterates its awareness that the identity of the

confidential informant may be imminently forthcoming, however, to the Court's knowledge the

confidential informant's identity remains tentative.

Thus, in balancing the public's interest in protecting the flow of information and the

personal safety of the informant against the Plaintiffs' need for the informant's identity, and taking

into consideration the claims asserted and the possible significance of the informer's testimony,

the Court denies Plaintiffs' request for disclosure of the confidential informant's identity.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Second Motion to Compel the

documents as described in Request for Production No. 15 is denied as moot;

18

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Compel the documents requested in Request for Production No. 12 is granted in part and denied in part as described herein; and

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion to Compel disclosure of the confidential informant by name, address, date of birth and social security as requested in Interrogatory No. 19 is denied.

**ALAN C. TORGERSON**
**United States Magistrate Judge**